Mr. Chief Justice Moore
delivered the opinion of the Court.
We shall refer to plaintiff in error as Century and to defendant in error as Blair.
On August 20, 1962, Blair agreed to sell a tract of land to Century for a total purchase price of $120,000. The *198 written contract entered into between the parties acknowledged the receipt by Blair of $2,750, and it provided that Century assumed and agreed to pay the amounts due under a first and second deed of trust of record against the land. The balance of the purchase price was to be paid in annual installments of $1,000, exclusive of interest, beginning August 20, 1963. The agreement contemplated sales by Century of smaller tracts within the area and the delivery of deeds by Blair to the purchaser of these sites under certain conditions not pertinent to the present controversy.
The contract contained the following pertinent provision:
“This contract may be cancelled at the option of the Seller, as to lands not previously conveyed to the Buyer by Warranty Deed, for failure of the Buyer to make any payment when due hereunder, by giving the Buyer notice in writing of intention to cancel said contract. Said notice shall be in writing, addressed to the Buyer, Century Enterprises, Inc., 1645 Court Place, Suite 400, Denver 2, Colorado, and sent postage-paid, certified United States Mail. Said notice shall be deemed to have been received when deposited as aforesaid in the United States Mails. Buyer shall have sixty (60) days from the date of mailing of the notice in which to remedy the default. In the event the Buyer fails to remedy the default within the sixty-day period, Seller may then elect to treat the contract as cancelled, take possession of the premises, and retain such moneys as have been paid by the Buyer as and for liquidated damages. * * *” (Emphasis added.)
On February 4, 1964, Blair sent the following notice to “Miss Sybil E. Buffum, Secretary,
Century Enterprises, Inc.,
810 23rd Street,
Golden, Colo.
“You are hereby notified, jointly and severally, that a certain ‘Agreement for Sale and Purchase’ entered into *199 at Fort Collins on the 20th day of August, 1962, between seller, Alex Blair, and buyer, Century Enterprises, Inc., is now and has been in default by the buyer, Century Enterprises, Inc., and the seller, Alex Blair, is now giving you notice to remedy the default within 60 days from the above date -by payment of the entire balance plus interest due under the terms of the contract. Failure of the seller to receive full payment on/or before April 4, 1964, will result in immediate cancellation of said contract as outlined on pages 4 and 5 of said agreement.”
“Very truly yours, “/S/ Alex Blair.”
The above-quoted instrument is the only notification ever given to anyone concerning a claimed breach of the terms of the contract. It purports to activate an acceleration clause, contrary to the express terms of the agreement.
No details of the claimed “default” of Century were contained in the notice, and it is obvious that Blair was not given “sixty (60) days from the date of mailing of the notice in which to remedy the default.” This grace period within which to make any overdue payment was expressly -contained in the original contract between the parties. Until a valid 60-day notice requiring Century “to remedy the default” within that period of time was served upon it, Blair had no right to proceed in demanding any forfeiture, or to activate any acceleration clause culminating in a demand for payment within 60 days of the “entire balance” of the full purchase price.
However, on 'December 29, 1965, Blair filed a complaint in which he alleged the making of the agreement of purchase and sale, and very briefly alleged that Century was in default for failure to comply with the terms of the agreement; that due notice as provided in the agreement had been given of his intent to cancel the agreement; that the default of Century had not been remedied; and that it had refused to give him a quit claim deed to the property in question. Blair asked entry *200 of a decree that the agreement be rescinded or cancelled, and that he recover his costs and attorney’s fees.
In its answer, Century denied the default, the allegation of notice, and the allegation that the default, if any, had not been remedied. Affirmatively it pleaded a waiver of the default, if any; that the purported notice of default was defective and failed to comply with the terms of the agreement; and that it was vague and indefinite and was not sent in accordance with the terms of the agreement.
Other issues not material to our resolution of the controversy were contained in the pleadings. The case was tried to the court and at the conclusion thereof findings were entered among which we note the following:
“5. Due notice of default and intention to cancel the agreement was given to Defendant by Plaintiff in accordance with the terms of the above mentioned agreement.”
The trial court entered judgment for Blair as prayed for in his complaint.
With reference to the above quoted finding of the trial court, it is sufficient to say that the notice mailed by Blair was patently defective and obviously was not “in accordance with the terms” of the contract entered into by the parties. Since all rights of Blair to cancel the agreement were conditioned upon the giving of proper notice of default it was error for the trial court to grant relief to him without compliance with the terms of the contract relating to the giving of notice.
The judgment is reversed and the cause remanded with directions to vacate the judgment and dismiss the action.