600 P.2d 748

**In re the Marriage of Harriet Ann WAYT, Appellee,**

v.

**William Ellsworth WAYT, Appellant.**

No. 14178.

Supreme Court of Arizona,
In Banc.

Sept. 14, 1979.

Murphy & Posner by K. Bellamy Brown, Phoenix, for appellee.

Puckett & Farrer, P. C., by Mathis Becker, Youngtown, for appellant.

GORDON, Justice:

Appellant William Ellsworth Wayt appeals from the Superior Court's disposition of property following dissolution of his marriage to Harriet Ann Wayt, appellee. Having jurisdiction of the matter pursuant to 17A A.R.S. Arizona Rules of Civil Appellate Procedure, Rule 19(e), we affirm the decision below.

The parties were married in Virginia in 1965. It was a first marriage for Mrs. Wayt, at the time a 44 year old school

teacher who had been teaching for a number of years. Mr. Wayt, 43 years of age, had been recently divorced and was the father of four children. He was also a teacher. Soon after the marriage, a house was purchased in Virginia in the wife's name only. Of the $10,000 down payment, $5,000 was a gift from Mrs. Wayt's mother, and the remainder was from funds accumulated by Mrs. Wayt prior to the marriage.

During the time the parties lived in Virginia, they kept separate checking accounts. Mrs. Wayt always paid the mortgage payments from her checking account, while Mr. Wayt paid for groceries and other expenses from his earnings. He also paid $125.00 a month in child support and spousal maintenance to his former wife.

From 1965 through 1969 the Wayts earned roughly equivalent salaries as teachers. In 1970, Mr. Wayt stopped teaching and began giving private music lessons in the family home. This venture was not successful, and since then, there has been a striking disparity between the incomes of the Wayts, with Mrs. Wayt virtually supporting her husband during the last three years of the marriage.

In July of 1973, the parties executed an agreement to purchase a home in Sun City, Arizona for the total price of $41,290. The $500 earnest money payment was from Mrs. Wayt's account. In April of 1974 the Virginia residence was sold and the proceeds were used to pay for the Arizona property and for moving expenses. The balance was divided equally between the Wayts. Also in April of 1974, the Wayts paid the balance of the purchase price on the Arizona house and received a joint tenancy deed to the property.

The Wayts moved to Arizona in the summer of 1974. It was their intent that Mr. Wayt would work and Mrs. Wayt would not. Because Mr. Wayt had difficulty finding employment, however, Mrs. Wayt was forced to return to Virginia to work at her old job for one year. During that time, Mr. Wayt remained in Arizona, living and taking care of the home. Although at all times physically capable of work, Mr. Wayt's con-

tribution to household expenses was nominal from 1974 to the time of the trial. Even Mrs. Wayt's attempt to help her husband develop a business in Arizona failed, and she lost $5,000 of her own money in the endeavor.

Mrs. Wayt eventually petitioned for dissolution of the marriage. The trial judge awarded the Sun City residence, valued at $70,000, solely to Mrs. Wayt, along with the balance of the community debts, amounting to approximately $11,000. Mr. Wayt received land in Virginia purchased in 1967 for $5,000 cash from Mrs. Wayt's account. The deed to that property was in the names of both parties as tenants by the entirety.

On appeal, Mr. Wayt challenges the trial court's award of the Sun City house solely to Mrs. Wayt. He argues that Arizona divorce courts are precluded from disposing of property held in joint tenancy in any way other than by partition if the property was acquired before August 8, 1973. Because Mr. Wayt equates the execution of the purchase agreement in July 1973 with acquisition of the property, he contends that the court erred in failing to partition the property.

■ It is indeed true that prior to August 8, 1973, A.R.S. § 25–318 and its predecessors were interpreted to prohibit a divorce court from compelling either co-tenant of jointly held property to divest himself of title. *See, e. g., Becchelli v. Becchelli,* 109 Ariz. 229, 508 P.2d 59 (1973); *Collier v. Collier,* 73 Ariz. 405, 242 P.2d 537 (1952). The Arizona Legislature modified § 25–318 in August, 1973, to empower the courts to equitably divide joint tenancy property in the same manner as they treat property held by the community or in common. *Jankowski v. Jankowski,* 114 Ariz. 406, 561 P.2d 327 (App.1977). This legislation, however, applies prospectively only, because the authority of the court to deal with joint tenancy property is governed by the law in effect at the time the property was acquired. *Jankowski, supra.* Thus, if the Wayts are deemed to have acquired the Sun City house before August 8, 1973, the trial court erred by awarding the property pur-

suant to equitable considerations rather than by partitioning it equally.

We reject Mr. Wayt's contention that execution of the purchase agreement in July, 1973, effectuated acquisition of the property as contemplated by A.R.S. § 25–318. We interpret this statute to require acquisition of legal title to property, because until the vendee acquires such title, a number of events may occur which would operate to prevent the completion of the transaction.[1] A contract for the sale of realty does not effect a transfer of legal title. The vendor remains the owner of the legal estate, while the vendee holds an equitable interest in the property. *Compare Bennett v. United States Land, Title and Legacy Co.,* 16 Ariz. 138, 141 P. 717 (1914) *with Shreeve v. Greer,* 65 Ariz. 35, 173 P.2d 641 (1946) *and Tucker v. Bylar,* 27 Ariz.App. 704, 558 P.2d 732 (1977). The trial court was, therefore, correct in awarding the property on the basis of equitable considerations.

The distribution and division of property pursuant to A.R.S. § 25–318 is within the sound discretion of the trial court, and upon review, all reasonable inferences must be taken in favor of sustaining the judgment of the trial court. *Nelson v. Nelson,* 114 Ariz. 369, 560 P.2d 1276 (App. 1977); *Day v. Day,* 20 Ariz.App. 472, 513 P.2d 1355 (1973). After examination of the entire record, we find ample evidence to support the court's decision that Mrs. Wayt was entitled to sole possession of the Sun City residence. The fact that the source of the funds for the property was, in large measure, Mrs. Wayt's separate account and that she supported Mr. Wayt for a number of years when he could have worked lead us to conclude that the trial court's disposition was clearly not an abuse of discretion.

In upholding the court's award of the Sun City property to Mrs. Wayt as equitable, we dispose of Mr. Wayt's second contention, that the court should have imposed an equitable lien on this property because of his contributions to both this and the Virginia property. The record supports the conclusion that Mr. Wayt's contributions have been recompensed.

The judgment of the Superior Court is affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and HOLOHAN, JJ., concur.

---

1. For example, the purchase agreement in the instant case provides, *inter alia,* that the vendor may rescind the agreement if the vendor determines that labor and material shortages, strikes, acts of God, or any other causes beyond the vendor's control make it impractical to commence or complete construction.